**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| THE STATE OF TEXAS and KEN PAXTON, in his official capacity at Attorney General of Texas, <br><br>       Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General, and the U.S. DEPARTMENT OF JUSTICE, <br><br>       Defendants. | Civil Action No. 2:24-cv-00240-Z |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR A
PRESERVATION ORDER, OR IN THE ALTERNATIVE, A TEMPORARY
RESTRAINING ORDER**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

AMY E. POWELL
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
c/o U.S. Attorney's Office for EDNC
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
Tel.: 919-856-4013
Email:  amy.powell@usdoj.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................1

ARGUMENT ....................................................................................................................3

I.     The Court Should Apply the Preliminary Injunction Factors ..................................3

II.    Plaintiffs Cannot Demonstrate Irreparable Harm Because They Have Not Shown
that Defendants Are Destroying or Will Destroy Documents ....................................5

IV.   Plaintiffs Have Not Justified a Preservation Order Under the Alternative Standards ............12

CONCLUSION ................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Apter v. Dep't of Health & Hum. Servs.*,
   80 F.4th 579 (5th Cir. 2023)................................................................................................11

*Armstrong v. Bush*,
   924 F.2d 282 (D.C. Cir. 1991) .............................................................................................7

*Bd. of Govs. of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) ..............................................................................................................11

*Capricorn Power Co., Inc. ("Capricorn")*,
   220 F.R.D. 429 (W.D. Pa. 2004) ...................................................................................... 4, 5

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ................................................................................................................4

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..............................................................................................................6

*Comcast Corp. v. FCC*,
   526 F.3d 763 (D.C. Cir. 2008) ............................................................................................8

*Deggs v. Fives Bronx, Inc.*,
   No. CV 19-406-BAJ-EWD, 2020 WL 3100023 (M.D. La. June 11, 2020).................... 3, 4

*FDA v. Alliance for Hippocratic Med.*,
   602 U.S. 367 (2024) ..............................................................................................................6

*Gabarick v. Laurin Mar. (Am.), Inc.*,
   No. CV 08-04007, 2008 WL 11381421 (E.D. La. Aug. 29, 2008) ......................................6

*Geyen v. Marsh*,
   775 F.2d 1303 (5th Cir. 1985)............................................................................................10

*Hester v. Bayer Corp.*,
   206 F.R.D. 683 (M.D. Ala. 2001) ........................................................................................6

*Huddleston v. Fed. Bureau of Investigation*,
   No. 4:20-CV-447, 2024 WL 3834383 (E.D. Tex. Aug. 15, 2024) ......................................5

*James Madison Project v. Dep't of Justice*,
   302 F. Supp. 3d 12 (D.D.C. 2018) .......................................................................................8

*John B. v. Goetz*,
   531 F.3d 448 (6th Cir. 2008)..............................................................................................11

*Judicial Watch v. DOJ.,*
   No. 22-CV-2884 (D.D.C.) ......................................................................................7

*Judicial Watch v. DOJ.,*
   No. 24-CV-3110 (D.D.C.) ......................................................................................7

*Judicial Watch, Inc. v. U.S. Dep't of Just.,*
   No. CV 18-154 (RBW), 2018 WL 11457399 (D.D.C. Nov. 13, 2018)...................... 3, 4, 5

*Kissinger v. Reporters Comm. for Freedom of the Press,*
   445 U.S. 136 (1980) .............................................................................................2

*Landmark Legal Found. v. EPA,*
   910 F. Supp. 2d 270 (D.D.C. 2012) ................................................................. 6, 8, 12

*Legacy of Life, Inc. v. Am. Donor Services, Inc.,*
   No. SA-06-CA-0802-XR, 2006 WL 8435984 (W.D. Tex. Sept. 21, 2006) ............. 3, 4, 6, 12

*Madden v. Wyeth,*
   No. 3-03-CV-0167-R, 2003 WL 21443404 (N.D. Tex. Apr. 16, 2003) ...................... 4, 5, 6

*Minier v. CIA,*
   88 F.3d 796 (9th Cir. 1996) ..................................................................................2

*Missouri v. DOJ.,*
   No. 4:24-cv-01301 (E.D. Mo.) ...............................................................................7

*Munaf v. Geren,*
   553 U.S. 674 (2008) .............................................................................................5

*Nken v. Holder,*
   556 U.S. 418 (2009) ...........................................................................................11

*Nyunt v. Chairman, Broad. Bd. Of Govs.,*
   589 F.3d 445 (D.C. Cir. 2009) .............................................................................10

*Oglesby v. U.S. Dep't of the Army,*
   920 F.2d 57 (D.C. Cir. 1990) .............................................................................. 2, 3

*Paralyzed Veterans of Am. v. Sec'y of Veterans Affs.,*
   345 F.3d 1334 (Fed. Cir. 2003)..............................................................................8

*Pearson v. U.S. Dep't of Homeland Sec.,*
   No. CIV. 3:08-CV-1885 (BH), 2009 WL 4016414 (N.D. Tex. Nov. 17, 2009)...................3

*Pueblo of Laguna v. United States,*
   60 Fed. Cl. 133 (2004)....................................................................................... 4, 5

*Shapiro v. U.S. Dep't of Just.*,
  40 F.4th 609 (D.C. Cir. 2022) .................................................................................... 5

*Software Tree, LLC v. Red Hat, Inc.*,
  No. 6:09-CV-097, 2010 WL 11531146 (E.D. Tex. Aug. 25, 2010) .............................. 3

*Texas Gen. Land Off. v. Biden*,
  619 F. Supp. 3d 673 (S.D. Tex. 2022) *rev'd and remanded on other grounds*, 71 F.4th 264 (5th Cir. 2023) ................................................................................................................. 10, 11

*Texas v. Real Parties In Interest*,
  259 F.3d 387 (5th Cir. 2001) ...................................................................................... 11

*U.S. Postal Serv. v. Gregory*,
  534 U.S. 1 (2001) ........................................................................................................... 8

*United States v. Chem. Found.*,
  272 U.S. 1 (1926) ........................................................................................................... 8

## STATUTES

5 U.S.C. § 552 ............................................................................................................... 2, 3

18 U.S.C. § 641 ................................................................................................................. 7

18 U.S.C. § 2071 ............................................................................................................... 7

44 U.S.C. § 3101 ............................................................................................................... 7

44 U.S.C. § 3102 ............................................................................................................... 7

44 U.S.C. § 3105 ............................................................................................................... 7

## OTHER AUTHORITIES

DOJ Special Collections Schedule – DAA-0060-2017-0034 (Dec. 20, 2018),
  available at https://www.archives.gov/files/records-
  mgmt/rcs/schedules/departments/department-of-justice/rg-0060/daa-0060-2017-
  0034_sf115.pdf .............................................................................................................. 7

## INTRODUCTION

On an emergency basis, Plaintiffs seek a temporary restraining order for a preservation order without any showing that relevant records would be destroyed absent such an order. This extraordinary request has no basis in fact or law, and the Court should reject it out of hand.[1] Less than a week ago, Plaintiffs submitted a Freedom of Information Act ("FOIA") request to the Department of Justice, and immediately began accusing the Department of destroying responsive records. Plaintiffs have no evidence whatsoever to back up that meritless accusation. The Department of Justice is preserving records from the Special Counsel's Office in the ordinary course pursuant to the relevant federal records schedule. As this Court already noted, "Plaintiffs' fears about document destruction in this case are specious at best." *See* ECF No. 5. Plaintiffs also cannot show a likelihood of success on their underlying claim, which is not a FOIA claim, but just a request for a preservation order for which they lack plausible basis. Plaintiffs admit that they do not yet have a FOIA claim and will not for several weeks at least. The Court should reject their demand for a free-standing preservation order and deny the motion.

## BACKGROUND

Plaintiff and Texas Attorney General Ken Paxton submitted a FOIA request dated November 8, 2024 to the Department of Justice ("DOJ"). *See* Compl. Ex. C, ECF No. 1-5 (hereinafter "the Request"). The submission makes six requests. Four of these requests seek communications from the Office of Special Counsel Jack Smith to other government entities, including: any New York State governmental office, the Fulton County District Attorney's Office, any Congressional office, and any governmental or law enforcement office in the State of Texas. *Id.* The fifth is for internal deliberations regarding the Special Counsel's reasoning for requesting that trial start in January of 2024. *Id.* And the last category seeks documents reflecting the mobile numbers and corresponding asset tag numbers assigned to the Special Counsel staff. *Id.* The submission also seeks a fee waiver, and further demands

---

[1] Defendants understand that service still has not been completed in this action and reserve all rights to assert lack of personal jurisdiction / service (among other defenses under Rule 12(b)).

that the Special Counsel Office preserve all of its records, even if not responsive to a FOIA request. *Id.* The Request threatens a referral for criminal prosecution if records were to be destroyed. *Id.*

Texas initially directed the Request to the DOJ's Mail Referral Unit, which referred the request to the Office of Information Policy ("OIP"), which handles records requests for, among other components, all Special Counsel Offices. *See* Defs.' Ex. 1 (Acknowledgement Letter) (APP001-03). By letter dated November 13, 2024 (two business days after receipt of the Request), OIP acknowledged receipt of the Request, and explained to Plaintiff that the nature of the Request constitutes "unusual circumstances" under the statute. *Id.* (citing 5 U.S.C. § 552 (a)(6)(B)(i)-(iii)). As a result, the Request was assigned to the "complex" processing track such that the agency needs "to extend the time limit to respond to [the Request] beyond the ten additional days provided by the statute." *Id.* The acknowledgement letter further invited discussion about narrowing the scope of the Request and or agreeing to an alternate timeframe for a response.

Prior to receiving this letter and without further discussion, on November 11, 2024, Plaintiffs filed the present complaint and emergency motion. *See* ECF Nos. 1 & 2. Plaintiffs have not yet completed service on the Defendants under Rule 4(i)(1). The Complaint purports to articulate claims for *ultra vires* action and under the All Writs Act and seeks a declaratory judgment and injunction preserving all records in the possession of Special Counsel Jack Smith. Compl., ECF No. 1. The Complaint does not purport to make a claim under FOIA and in fact concedes that no such claim is ripe. Compl. ¶ 24.[2]

---

[2] Section 552(a)(4) is the general FOIA provision authorizing judicial review of agency decisions to withhold records from FOIA requestors. *See* 5 U.S.C. § 552(a)(4)(B). Full and timely exhaustion of administrative remedies is a prerequisite to judicial review under § 552(a)(4). *See, e.g., Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61-62, 71 (D.C. Cir. 1990). Generally speaking, under FOIA, "[a] district court only has *jurisdiction* to compel an agency to disclose *improperly withheld* agency records," *i.e.* records that do "not fall within an exemption." *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996); *see also* 5 U.S.C. § 552(a)(4)(B) (providing the district court with jurisdiction only "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"). Although it is possible to constructively exhaust administrative remedies, *see Pearson v. U.S. Dep't of Homeland Sec.*, No. CIV. 3:08-

Plaintiffs' emergency motion seeks essentially the same relief – that Special Counsel Jack Smith be prohibited from destroying any records in his possession (or any records responsive to the Request) – and further requires a report as to steps taken to comply with the preservation order. ECF No. 2-2. On November 12, 2024, the Court declined to issue an order immediately, explaining that all litigants are already under an obligation to preserve documents, that Plaintiffs' fears about document destruction are specious at best, and that Plaintiffs' allegations are readily distinguishable from cases where preservation orders had been entered. ECF No. 5. The Court directed Defendants to respond to the motion by today, November 18, 2024. *Id.*

## ARGUMENT

### I.    The Court Should Apply the Preliminary Injunction Factors

Courts in this Circuit have considered several different tests when resolving motions to preserve documents, although none is in the context of a freestanding claim for a preservation order in light of a future FOIA action. *See Deggs v. Fives Bronx, Inc.*, No. CV 19-406-BAJ-EWD, 2020 WL 3100023, at *2 (M.D. La. June 11, 2020); *Legacy of Life, Inc. v. Am. Donor Services, Inc.*, No. SA-06-CA-0802-XR, 2006 WL 8435984, at *1 (W.D. Tex. Sept. 21, 2006).

The first test is the four-prong test for a preliminary injunction, (*i.e.*, the consideration of (1) substantial likelihood of success on the merits; (2) substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) whether the threatened injury outweighs any damage that the injunction might cause defendants; and (4) whether the injunction will disserve the public interest). *Deggs*, 2020 WL 3100023, at *2 (*citing Software Tree, LLC v. Red Hat, Inc.*, No. 6:09-CV-097, 2010 WL 11531146, at *1 (E.D. Tex. Aug. 25, 2010)); *see also Judicial Watch, Inc. v. U.S. Dep't of Just.*, No. CV 18-154 (RBW), 2018 WL 11457399, at *1 (D.D.C. Nov. 13, 2018) ("When reviewing a motion for a

CV-1885 (BH), 2009 WL 4016414, at *7 (N.D. Tex. Nov. 17, 2009); *see also Oglesby*, 920 F.2d at 62; 5 U.S.C. § 552(a)(6)(C), Plaintiffs concede that they have not yet done so here.

3

preservation order, the Court follows 'the same analytical framework as a motion for injunctive relief[.]'") (citation omitted). The second test is the three-prong preservation test of *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp* ("*Capricorn*"), *i.e.*, "the consideration of (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation." *See Deggs*, 2020 WL 3100023, at *2 (citing *Capricorn*, 220 F.R.D. 429, 433 (W.D. Pa. 2004)). Yet a third test, similar to the *Capricorn* test, was used by the Court of Federal Claims in *Pueblo of Laguna v. United State*s, 60 Fed. Cl. 133 (2004); the Court of Federal Claims concluded that the issuance of evidence preservation orders is an inherent power of the court, and that such an order may issue when the movant "demonstrate[s] that it is necessary and not unduly burdensome." *See Legacy of Life, Inc.*, 2006 WL 8435984, at *2 (citing *Pueblo of Laguna*, 60 Fed. Cl. at 138). Those courts appear to reason that a court's authority to issue such orders is part of its inherent authority to oversee litigation, like other discovery orders to identify witnesses or produce documents and is not the same as equitable relief. *Cf. id.*; *see also Deggs*, 2020 WL 3100023, at *2 ("courts must use restraint and discretion when exercising inherent authority.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

The Court should apply the test for preliminary injunctive relief because that is exactly what Plaintiffs seek here – a temporary restraining order and preliminary substantive relief on their claims that they are entitled to preservation. *See Madden v. Wyeth*, No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003) ("A motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted."); *Judicial Watch, Inc.,* 2018 WL

4

11457399, at *1; *see also Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (stating that a "preliminary injunction is an extraordinary and drastic remedy"—"the exception," rather than "the rule") (citation omitted). Even if the *Capricorn* or *Pueblo of Laguna* tests were appropriate in some contexts, they are not here. Plaintiffs are not asking the Court to preserve evidence as part of its discovery oversight powers or to preserve evidence relevant to litigating some underlying claim; the preservation order is the ultimate relief sought by Plaintiffs.[3]

    Regardless of which test is applied here, however, Plaintiffs here have not made the requisite showing.

## II.    Plaintiffs Cannot Demonstrate Irreparable Harm Because They Have Not Shown that Defendants Are Destroying or Will Destroy Documents.

First, and most importantly, Plaintiffs cannot demonstrate irreparable harm, because Defendants are not destroying and will not destroy federal records in the possession of the Special Counsel's Office, including responsive documents. Plaintiffs offer no evidence of any document destruction, and none exists. This fatally undermines Plaintiffs' claim for a preservation order under any standard and deprives this Court of jurisdiction.

Under any of the tests described in Part I, Plaintiffs must show that Defendants will destroy documents without such an order. *See Madden*, 2003 WL 21443404, at *1 (plaintiff seeking preliminary injunction preservation order must show irreparable harm); *Pueblo of Laguna*, 60 Fed. Cl. at 138 (plaintiff seeking preservation order must show that it is "necessary"); *Capricorn*, 220 F.R.D. at 433

---

[3] An order premised on the Court's discovery power seems uniquely inappropriate in the FOIA context, where there is ordinarily no discovery. "'[D]iscovery in FOIA cases is rare' and courts should generally order it only 'where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith . . . .'" *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-447, 2024 WL 3834383, at *9 (E.D. Tex. Aug. 15, 2024) (quoting *Shapiro v. U.S. Dep't of Just.*, 40 F.4th 609, 615 (D.C. Cir. 2022)).

(considering "the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question" and any "irreparable harm" to the party seeking the order).

Moreover, because the relief sought in the underlying Complaint and in this motion is an injunction, Plaintiffs must demonstrate "certainly impending" future injury to show standing to bring this claim in the first place. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon."). Here the relief sought is a preservation order; accordingly, Plaintiffs cannot show that the injury being redressed (alleged future loss of documents) is "certainly impending" under this standard.

As the Court recognized, "all litigants are already obligated to take appropriate measures to preserve documents and information." *See* ECF No. 5 at 1 (citing *Legacy of Life, Inc.*, 2006 WL 8435984, at *1). And courts reject requests for preservation orders premised on speculation, like that presented by Plaintiffs here, that litigants might violate those obligations. *See, e.g., Madden*, 2003 WL 21443404, at *1 ("Without some proof that evidence may be lost or destroyed without a preservation order, the court is not inclined to enter such an order in this case."); *Legacy of Life, Inc.*, 2006 WL 8435984, at *3 ("the general obligations to preserve evidence and consequences for failure to do so are sufficient to ensure the compliance of these defendants"); *Gabarick v. Laurin Mar. (Am.), Inc.,* No. CV 08-04007, 2008 WL 11381421, at *3 (E.D. La. Aug. 29, 2008) ("In the absence of information that particular evidence will be destroyed or altered–in direct contravention to the preexisting legal duty to preserve evidence–the Court finds that the Plaintiffs' requested protective orders do not meet the requirements of Rule 26."); *Hester v. Bayer Corp.*, 206 F.R.D. 683, 686 (M.D. Ala. 2001) (rejecting preservation and criticizing plaintiffs' gamesmanship in seeking the order *ex parte*); *see also Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 279 (D.D.C. 2012) (rejecting preservation order in FOIA matter). And the Court

has already distinguished the inapposite cases cited by Plaintiffs.  *See* ECF No. 5 at 1-2.  Thus, the parties' general obligation to preserve evidence alone is sufficient to reject the protective order.[4]

In this case, however, there is more.  DOJ, including the Special Counsel and his staff, is bound by, and is committed to abiding by, the Federal Records Act and a specific records schedule that governs the preservation and disposition of the records of special investigations.  Congress has enacted various statutory provisions, collectively known as the Federal Records Act ("FRA"), that govern "the creation, management and disposal of federal records."  *See Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991).  The FRA requires heads of federal agencies to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency."  44 U.S.C. § 3101.  The statute also requires agencies to establish and maintain an active records management program that complies with the FRA and regulations promulgated by NARA, *id.* § 3102, and to establish safeguards "against the removal or loss of records" that the agency head determines should be preserved, *id.* § 3105.  Pursuant to these authorities, there is a final records schedule that applies to all records of the Special Counsel's Office; they are deemed "permanent" records and must be preserved under federal law.  *See* Ex. 2, DOJ Special Collections Schedule – DAA-0060-2017-0034 (Dec. 20, 2018) (APP004-09), also  available at https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-justice/rg-0060/daa-0060-2017-0034_sf115.pdf.  Penalties for violations of these requirements can potentially be substantial.  *See* 18 U.S.C.§§ 641, 2071.

---

[4] Plaintiff's FOIA request is not the first request for records of the Special Counsel's Office. There are numerous such requests being processed, as well as other lawsuits, which raise claims under FOIA.  *See, e.g., Judicial Watch v. DOJ*, 22-cv-2884 (D.D.C.); *Judicial Watch v. DOJ*, 24-cv-3110 (D.D.C.); *Missouri v. DOJ*, 4:24-cv-01301 (E.D. Mo.).  The Department's Office of Information Policy is responsible for processing FOIA requests directed to all Special Counsels' Offices and further ensures that the law and Department policies regarding records are applied.

As Government officials and attorneys bound by these obligations, Defendants must be presumed to be acting in accordance with their duties. *See, e.g.*, *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and . . . that they have properly discharged their official duties."); *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the actions of Government agencies[.]"). This presumption applies "where a government official or entity conducts official acts in the manner provided by statute, regulation, or policy." *James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12, 32 (D.D.C. 2018); *see also Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) ("We must presume an agency acts in good faith[.]"); *Paralyzed Veterans of Am. v. Sec'y of Veterans Affs.*, 345 F.3d 1334, 1349 (Fed. Cir. 2003) ("[G]overnment officials are presumed to act in good faith and with regularity.").

This Court should reject as unfounded Plaintiffs' arguments that federal attorneys would be expected to violate their legal obligations, as well as their professional responsibilities to their client and the Court. Plaintiffs base these extraordinary allegations in part on an unsupported allegation that a previous Special Counsel's Office working on a different investigation may have destroyed documents. Plaintiffs do not cite any evidence of misconduct or even any formal complaints. Rather, they reference a years-old congressional letter seeking additional information from DOJ about a different Special Counsel's Office. *See* ECF No. 2 at 4. That is certainly not a sufficient basis for finding that different DOJ officials years later are likely to engage in the intentional destruction of documents. *See Landmark Legal Found.*, 910 F. Supp. 2d at 279 (rejecting request for preservation order despite previous document loss by same agency in a different matter).

DOJ is committed to preserving its records and following the law, and none of Plaintiffs' remaining arguments provides any basis for the relief they request (or even relates to document destruction). Plaintiffs argue, for example, that the requested records are likely to be destroyed

because DOJ "is willing to go to extreme lengths to resist transparency." ECF No. 2 at 4. Namely, Plaintiffs disagree with an unrelated assertion of executive privilege made by President Biden in response to a subpoena from Congress for audio recordings of law enforcement interviews conducted by a different Special Counsel's Office. This has absolutely nothing to do with Special Counsel Smith's investigations or records, and has no bearing on the requested relief. A presidential assertion of privilege made to protect law enforcement files on a different matter says nothing about a risk of document destruction by the Special Counsel's office at issue here or the Department of Justice writ large.

Plaintiffs also argue that Special Counsel Smith is personally willing to make "aggressive and implausible legal arguments to justify untenable governmental acts," citing two things: (1) a conviction he worked on that was reversed by the Supreme Court in 2016 (after being affirmed by the Fourth Circuit); and (2) a representation that a prosecutor in the Special Counsel's Office made to a district court about the organization of documents in a box that the Office later corrected and explained. *See* ECF No. 2 at 5. Neither of those allegations has anything to do with a risk of destruction of documents, nor do they reflect "implausible" arguments or "untenable" governmental acts. Correcting a representation that later turned out to be imprecise or erroneous is evidence of good faith on the part of the Special Counsel's Office, not the contrary. Nor does the Solicitor General losing a case in the Supreme Court show a likelihood of destroying documents.

Lastly, Plaintiffs argue that Mr. Smith has "a strong incentive" to destroy documents because the media has reported that Elon Musk wants Mr. Smith "punished" for unspecified "abuses" and Congressman Jordan has not "rule[d] out" a Congressional investigation of Jack Smith. *See* ECF No. 2 at 5-6. Officials associated with the Special Counsel's Office are already aware of and fully committed to complying with their obligations to preserve records, and their compliance with the law is not affected in any way by such statements. And the Department has made clear that it has no

concerns about meeting its record preservation obligations in this matter.  *See* Ex. 3, Letter from DOJ to Congressman Jordan (APP010-12).

In sum, Plaintiffs have not shown that responsive records will be destroyed absent an order from this Court.  As a result, they cannot establish a "certainly impending" future injury sufficient to support standing to bring this lawsuit, and they cannot establish irreparable harm or necessity sufficient to show that a preservation order would be warranted.

## III.    Plaintiffs Have Not Justified an Order Under the Preliminary Injunction Factors.

Because Plaintiffs have not shown that documents will be destroyed, they cannot show irreparable harm.  *See supra* Part II.  Plaintiffs also cannot make the requisite showing under the remaining preliminary injunction factors.  They have no likelihood of success on the merits of their claim.  In addition to lacking standing to bring such a claim for the same reasons they have not shown any irreparable harm, they have not made a FOIA claim, and have not invoked a valid waiver of sovereign immunity under the ultra vires doctrine or otherwise stated a claim.

As an initial matter, Plaintiffs cannot make an *ultra vires* claim because they have not identified any action that has been taken in excess of government authority.  Since the APA's amendment in 1976, an *ultra vires* claim has been described as "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Texas Gen. Land Off. v. Biden*, 619 F. Supp. 3d 673, 701 (S.D. Tex. 2022) (quoting *Nyunt v. Chairman, Broad. Bd. of Govs.*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.)), *rev'd and remanded on other grounds*, 71 F.4th 264 (5th Cir. 2023).[5]  Under some

---

[5] An "*ultra vires* claim" was used historically to get around federal sovereign immunity.  *See Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985).  That is, it relied on the "fiction that a federal official acting in violation of the Constitution or beyond his statutory powers was acting for himself only and not as an agent of the government." *Id.* (collecting cases).  But the legal landscape changed in 1976, when Congress amended the APA and thus "d[id] away with the *ultra vires* doctrine and other fictions surrounding sovereign immunity."  *Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 593 (5th Cir. 2023) (quoting *Geyen*, 775 F.2d at 1307).

circumstances, an *ultra vires* claim might be available where a government authority has taken action in excess of its authority and the plaintiff "would otherwise be wholly deprived of a meaningful opportunity of vindicating [their] rights." *Tex. Gen. Land Off.*, 619 F. Supp. 3d at 702 (citing *Bd. of Govs. of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991). But that is not true here. No governmental authority has taken any action that Plaintiffs allege is outside its authority, and Plaintiffs cite no authority for bringing an *ultra vires* action on the theory that a government official might someday be motivated to exceed his authority in the future.[6]

Finally, the remaining requirements for issuance of a preliminary injunction—the balance of harms and the public interest, which "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009)—also weigh against the issuance of injunctive relief here. Because records are being preserved and Plaintiffs are not harmed, the balance of harm dictates against an unnecessary order. And the public interest is served through the already existing obligation on all federal employees to comply with the law. *See, e.g.*, *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (granting mandamus relief and reversing a district court's order to preserve hard drives by forensic imaging as an abuse of discretion on the grounds that, among other reasons, "nothing in the record indicates that defendants are unwilling, or will refuse, to preserve and produce all relevant ESI in the future").

---

[6] Nor does the All Writs Act assist Plaintiffs. It is not an independent basis for jurisdiction and does not expand the Court's jurisdiction beyond its existing authority. *Texas v. Real Parties In Interest*, 259 F.3d 387, 392 (5th Cir. 2001). There is also no imminent loss of the Court's ability to exercise its jurisdiction, and no reason to make novel use of the All Writs Act to protect a hypothetical future FOIA action.

IV.     **Plaintiffs Have Not Justified a Preservation Order Under the Alternative Standards.**

Analyzing the motion under the alternative standards set forth in *Pueblo Laguno* or *Capricorn* would not rescue Plaintiffs' claim.  As set forth in Part II, Plaintiffs cannot establish that the Order is "necessary," nor should the Court find significant "concern" about the integrity of the documents requested.  DOJ is committed to preserving the records as required by law, and there is no indication that DOJ does not plan to do so.  "[R]ecognizing that all litigants are already obligated to take appropriate measures to preserve documents and information that are reasonably calculated to lead to the discovery of admissible evidence and likely to be requested during discovery, some courts have held that '[t]o supplement every complaint with an order requiring compliance with the Rules of Civil Procedure would be a superfluous and wasteful task, and would likely create no more incentive upon the parties than already exists.'"  *Legacy of Life, Inc.*, 2006 WL 8435984, at *1 (internal citation omitted));  *see also Landmark Legal Found.,* 910 F. Supp. 2d at 279.  The same is true here – there is no justification for entering the requested order.

**CONCLUSION**

For these reasons, the Court should deny the emergency motion.

Dated: November 18, 2024                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director, Federal Programs Branch

                                            */s/ Amy E. Powell*
                                            AMY E. POWELL
                                            Senior Trial Counsel
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            c/o U.S. Attorney's Office for EDNC
                                            150 Fayetteville St, Suite 2100
                                            Raleigh, NC 27601

12

Tel.: 919-856-4013
Email:  amy.powell@usdoj.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2024, I electronically filed the foregoing Memorandum and all supporting materials with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Amy E. Powell*
AMY E. POWELL
United States Department of Justice

14